HOLLAND & KNIGHT LLP
Nicholas B. Melzer (246356)
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Telephone:  213.896.2400
Fax:  213.896.2450
E-mail:nicholas.melzer@hklaw.com

Attorneys for Plaintiff
VISTA ENERGY MARKETING, LP

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VISTA ENERGY MARKETING, LP, | ) **Case No.:** _____ |
| Plaintiff, | ) **COMPLAINT FOR:** |
| vs. | ) **1. Violation of RICO, 18 U.S.C. § 1961-1968** |
| PACIFIC GAS AND ELECTRIC COMPANY, a California corporation,; ALBERT TORRES, an individual; BILL CHEN, an individual; TANISHA ROBINSON, an individual, | ) **2. Respondeat Superior/Agency**<br>) **3. Violation of Sherman Act, 15 U.S.C. § 2;**<br>) **4. Breach of fiduciary duty**<br>) **5. Intentional misrepresentation;**<br>) **6. Negligent misrepresentation;**<br>) **7. Intentional interference with contract;** |
| Defendants. | ) **8. Intentional interference with prospective business advantage; and**<br>) **9. Violation of California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq.** |
| | ) **DEMAND FOR JURY TRIAL** |

Plaintiff Vista Energy Marketing, LP ("Vista" or "Plaintiff") respectfully files this Complaint against Defendants Pacific Gas and Electric Company ("PG&E"), Albert Torres, Bill Chen, and Tanisha Robinson for: (1) Violation of RICO, 18 U.S.C. § 1961-1968; (2) Respondeat Superior/Agency; (3) Violation of the Sherman Act § 2, 15 U.S.C. § 2; (4) Breach of fiduciary duty; (5) Intentional misrepresentation; (6) Negligent misrepresentation; (7) Intentional interference with contract; (8) Intentional interference with prospective business advantage; and (9) Violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq. In support of these claims, Vista respectfully makes the following allegations.

*Holland & Knight LLP*
*400 South Hope Street, 8th Floor*
*Los Angeles, CA  90071*
*Tel: 213.896.2400*
*Fax: 213.896.2450*

COMPLAINT                                                                 CASE NO.:

## NATURE OF CASE

1.    This case seeks to remedy PG&E's fraudulent, deceptive, and monopolistic practices in California's deregulated retail natural-gas market.

2.    PG&E is the traditional public utility in Northern California. PG&E currently holds between 70-90% of the natural gas commodity market. Vista is a certified "Core Transport Agent," or "CTA," which is a competitive provider of natural gas in California. Vista operates in PG&E's service area.

3.    PG&E and Vista compete to supply natural gas to the same residents and small businesses. Unless the customer affirmatively chooses a different CTA, the customer returns to PG&E by default at the severance of Vista's contract with the customer.

4.    Vista has chosen consolidated billing and collections, available as a matter of right to CTAs under PG&E's tariffs. Under this option, PG&E sends one bill to the customer reflecting both its charges and Vista's charges; PG&E is responsible for collecting payments and distributing that money to Vista. PG&E acts as Vista's agent for these important business functions.

5.    PG&E has willfully and knowingly manipulated its agency position and engaged in improper and unlawful billing, collection, and payment practices under which PG&E uses its position as Vista's billing and collections agent to effectively misappropriate money from Vista, defrauding Vista and its customers, and unfairly competing with Vista for core natural gas customers.

6.    For example, PG&E receives payments from Vista customers and "holds" that money in a PG&E account instead of paying it to Vista for its commodity charges.

7.    Similarly, PG&E applies credits from its own services or programs, such as rebates or credits for the use of solar panels, to Vista's commodity gas charges. In this way, PG&E effectively misappropriates Vista's customer charges to offset the money that PG&E owes to customers.

8.    PG&E also inappropriately "reverses" customer charges. A "reversal" should occur only where PG&E permanently terminates service to a customer, either because of non-payment or because the customer terminates PG&E service altogether. Put in perspective of the billing relationship, a reversal signals to Vista that PG&E has not and cannot collect on any part of the customer's unpaid balances.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

COMPLAINT                                                     CASE NO.:

9.      However, PG&E is reversing Vista customer accounts for which PG&E has in fact received payment. Instead of applying those charges to the Vista customer account balance, PG&E is crediting those amounts to its own electric or gas transportation accounts, and then inexplicably reversing the amounts owed to Vista. PG&E similarly reverses accounts and then deceptively retains the customer.

10.     These actions cause Vista substantial harm, both with respect to the amounts withheld and with respect to its relationships with its customers. Vista has lost countless customers who were annoyed or upset at Vista's collection efforts on fully-paid accounts that PG&E falsely informed Vista were in arrears.

11.     Further, Vista has disconnected or cancelled hundreds of customer accounts for non-payment based on PG&E's false representations made over the wires in interstate commerce to Vista that the Vista customers had not paid their bill for Vista's charges.

12.     PG&E has also used its fiduciary position as Vista's billing and collections agent to engage in unlawful competition with Vista by, among other things, inaccurately informing Vista's customers that they need not pay for Vista's services and by using its position as Vista's billings and collections agent to improperly induce Vista's customers to switch their service to PG&E.

13.     PG&E's abuse of its fiduciary relationship with Vista as well as its abuse of its market power as a regulated monopoly is knowingly calculated to drive away as many customers from Vista as possible back to PG&E; these actions are done with the specific intent to destroy competition in the retail natural gas commodity market in PG&E's service area.

14.     PG&E's actions hurt both consumers and competition in California, increasing commodity gas prices in California.

**THE PARTIES**

15.     Vista Energy Marketing, LP is a privately-owned provider of retail natural gas to end-user residential and commercial customers throughout the United States and Canada. Vista is headquartered at 4306 Yoakum Boulevard, Suite 600, Houston, Texas 77006.

16.     Defendant PG&E is a California corporation with its principal place of business located at 77 Beale Street, San Francisco, California 94105. PG&E is a subsidiary of PG&E

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

- 3 -

COMPLAINT                                                                          CASE NO.:

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

Corporation and is one of the largest regulated investor-owned electric utilities in California. On its website (http://www.pge.com), PG&E represents that its service area extends from Eureka in the north to Bakersfield in the south, and from the Pacific Ocean to the Sierra Nevada. It operates 141,215 circuit miles of electric distribution lines and 18,616 circuit miles of interconnected transmission lines throughout this area. According to its website, PG&E maintains 4.3 million natural gas customer accounts.

17.     PG&E is a regulated monopoly utility within its service area. It is regulated by the California Public Utility Commission ("CPUC").

18.     Defendant Albert Torres is the Vice President of Customer Operations at PG&E and manages, *inter alia*, PG&E's billing, payment processing, and credit activities for its customers. Defendant Bill Chen works at PG&E as its ESP Services Manager and manages PG&E's relationships with CTAs (as well as PG&E's relationship with competitive electricity providers). Defendant Tanisha Robinson works at PG&E as its Supervisor for EDI Operations and ESP Billing. Ms. Robinson manages Optional Consolidated PG&E Billing and the process by which EDI files (described below) are transmitted to Vista.

## JURISDICTION & VENUE

19.     This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises out of PG&E's violations of the laws of the United States. This Court has supplemental jurisdiction over Vista's claims based on California law under 27 U.S.C. § 1367. In addition, the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and the matter in controversy exceeds $75,000 exclusive of interest and costs.

20.     This Court has personal jurisdiction over PG&E because PG&E resides in this State, does business in this State, has engaged in acts or omissions within this State causing injury, and has otherwise established contacts with this State making the exercise of personal jurisdiction proper.

21.     Venue is proper in this District under 28 U.S.C. §§ 1391(b)(1) & (2) because PG&E resides in this District, and a substantial part of the events or omissions giving rise to the action occurred in this District.

- 4 -

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

**INTRADISTRICT ASSIGNMENT**

22.     Pursuant to Civil L-R 3.2(c), intradistrict assignment in San Francisco is proper because the unlawful conduct that gives rise to these claims occurred in the City and County of San Francisco.

**GENERAL ALLEGATIONS**

23.     PG&E has been the regulated monopoly utility in Northern California since 1905. It traditionally provided both electricity and natural gas to all end users—both residential and commercial—in its service area. As a monopoly utility, PG&E is regulated by the CPUC. Through the use of a pre-approved formula, the CPUC regulates the rates that PG&E may charge for the energy it provides, including the price it may charge for the commodity of natural gas.

24.     According to its website, PG&E has approximately 4.3 million natural gas customer accounts in its service area.

25.     In 1991, the state legislature partially deregulated the natural-gas utility industry in California.

26.     In connection with this deregulation, the CPUC established a pilot aggregation program which offered residential and small commercial gas customers, called "core" customers, the opportunity to aggregate their gas loads so that they could participate in competitive gas markets and thereby obtain a lower price for natural gas. Because of this program, California residents are free to purchase their commodity gas from either PG&E or from certain private providers, called "Core Transport Agents," or CTAs.

27.     The stated purpose of the CTA program is to "lower[] CTA customer prices and enable[] [CTAs] to better compete with utilities and weaken monopolies." (*See* http:www.cpuc.ca.gov/PUC/energy/Retail_Gas_Markets/.) CTAs such as Vista provide much-needed and consumer-driven alternatives to the utility model, such as gas commodity fixed pricing, unlimited usage billing, winter fixed rates and guaranteed lower summer rates that the utility model—PG&E's model in particular —simply cannot provide.

28.     Although California core gas customers may purchase their natural gas from a non-monopoly CTA, the regulated monopoly utilities, including PG&E, continue to provide natural gas

- 5 -

utility service to these customers.

29.     Accordingly, the CTAs compete with PG&E for natural-gas core customers.

30.     A proposed CTA must fulfill exacting standards to operate in California, completing an extensive application, submitting the fingerprints of its executives, establishing its creditworthiness and, ultimately, posting a security bond. Accordingly, the regulatory process itself creates barriers to entry in addition to typical business needs such as capitalization and market expertise.

31.     CTAs purchase natural gas on the open market and sell the gas directly to end users using PG&E's distribution system. When an end user purchases gas from a CTA instead of PG&E, the utility charges a separate "transportation" charge to the customer. In addition, PG&E typically charges customers for electricity on the same bill.

32.     The natural gas supplied by the CTAs is fungible in chemical composition and function, completely interchangeable with that supplied by PG&E; both may be used by core customers to heat homes and businesses and other such uses.

33.     As another aspect of deregulation, CTAs may elect, as a matter of right, to have their billing consolidated with PG&E's; i.e., both the CTA's and PG&E's charges appear on one statement and the customer pays both with one check (or other method) to PG&E.

34.     Specifically, under PG&E's relevant tariffs, known as its "Gas Rules," CTAs have the right to participate in a billing and payment program called "Optional Consolidated PG&E Billing." If the CTA chooses this billing option, PG&E must calculate the CTA's charges based on the customer's gas usage and apply the proprietary and confidential rate provided by the CTA to PG&E once a month. Under Consolidated PG&E Billing, PG&E "assumes responsibility for the accuracy of the calculation of CTA's charges," but not for the accuracy of the CTA's rate per therm of natural gas provided. Gas Rule No. 23.C.1.c(1)(b)(iv).

35.     PG&E operates Consolidated Billing as a unit separate from its primary business activities. Tanisha Robinson, for example, supervises two employees whose responsibility includes little else beyond sending the electronic files referenced in Paragraphs 54, 66, and 76 and otherwise maintaining the Consolidated Billing structure imposed by Gas Rule 23. William Chen similarly

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

- 6 -

devotes all of his work time to managing either Consolidated Billing or to managing customer care issues (e.g., switching customers' gas commodity service either to or from a CTA) associated with Consolidated Billing.

36.     Under Consolidated Billing, PG&E also acts as the CTA's collections agent. As such, PG&E is required to pay to the CTA the amounts paid to PG&E for the CTA's gas commodity charges after it receives that money from the customer. Gas Rule 23.C.1.c(4)(a). PG&E is required to transfer the received payments to the CTA either 17 days after the bill was rendered to the customer or the next business day after the payment is received by the utility. *Id.*

37.     When transferring payments, PG&E is required to specify the amount paid by each service account. *Id.* If there are any amounts resulting from returned payments (e.g., the customer's check "bounces") or returned payment charges, PG&E may debit those amounts to the CTA on the billing statement for the following month. *Id.* The tariffs permit no other debits or set-offs.

38.     PG&E is responsible for collecting the unpaid balance of all charges from customers, sending notices informing customers of unpaid balances, and taking the appropriate actions to recover any unpaid amounts owed to the CTA. Gas Rule 23.C.1.c(5)(a).

39.     Vista is a qualified CTA operating in PG&E's service area. Vista signed a Core Gas Aggregation Service Agreement with PG&E in January 2009 and began serving customers in Northern California shortly thereafter.

40.     Vista supplies natural gas to its customers by transporting it across interstate pipelines for delivery to the PG&E Citygate. On receipt of Vista's gas, PG&E charges Vista both for storing it and for transporting it to the customer based on "take or pay" terms, the amount of which is determined by reference to Vista's overall volume (or "load") calculated on both a monthly and yearly basis.

41.     Vista spends significant time and money marketing for customers. These activities included engaging in direct-mail marketing, door-to-door marketing, internet and print campaigns, and other activities.

42.     As a result of these marketing efforts, Vista grew its customer base in PG&E's service area to approximately 66,000 core customers in 2013.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

- 7 -

43. Vista participates in the Consolidated PG&E Billing Option, making PG&E its billing and collections agent for all of Vista's core customers in PG&E's service area. Vista pays PG&E approximately $51,000.00 per month for this service.

44. Because PG&E holds all of Vista's customer information and also is responsible for calculating the amount due, billing those amounts, collecting the money, and providing it to Vista, the utility exercises a tremendous amount of control over Vista's customer base.

**PG&E's Payment Withholding Scheme**

45. After PG&E receives the customer's payment, it unilaterally divides the payments among the various service accounts contained in the bill, including Vista's charges for natural gas, PG&E's transportation charge, and PG&E's electricity charges (if any). PG&E takes the position that this process is proprietary and will not share information about how it divides the payments received. In its role as Vista's billing and collections agent, PG&E has engaged in improper and unlawful activities which have violated Vista's rights and caused Vista damages and irreparable harm in a number of ways.

46. Specifically, for some of Vista's core customers, PG&E simply does not remit to Vista funds it has received for Vista's gas commodity charges. As of the date of this filing, Vista has not received full payment from PG&E on hundreds of Vista customer accounts. According to Vista's records, as of at least June 2016, it is owed over $2.5 million from its customers with aging accounts past due by sixty days or more.

47. To track the billing process, PG&E regularly provides Vista with an Electronic Data Interchange ("EDI") file or a file transfer link containing information about each account for which there is activity. For easy reference, Vista in this Complaint refers to the types of information packets sent by PG&E as "EDI files" regardless of format.

48. The EDI files contain information about the status of Vista's customer accounts. Specifically, in the EDI files, PG&E makes several representations to Vista about its customers, including:

a. Vista customers to whom PG&E has sent a bill containing Vista's commodity gas charges and the amount of Vista's charges that PG&E will collect;

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

- 8 -

COMPLAINT                                                                                          CASE NO.:

b.      Vista customers who have paid Vista's previous charges and the amount PG&E has apportioned to Vista;

c.      The balance of the Vista customer's account for Vista's commodity gas charges;

d.      The identity of Vista customers who have not fully paid Vista's gas charges; and/or

e.      The number and identity of Vista customers who have had charges "reversed" by PG&E.

49.      PG&E's EDI files frequently contain intentionally false representations to Vista about the status of its customer accounts, including representations that certain customers have not paid Vista's charges, when those customers actually are current.

50.      PG&E sends the EDI files using interstate wires; that is, PG&E typically attaches the file or a link to a file-share site to an email that is sent over the internet from California to Houston, Texas.

51.      Vista relies on the data and representations of PG&E contained in the EDI file. When it does not receive payments from PG&E for its customers, Vista may contact the customer regarding the delinquency.

52.      Often, however, the customers state that they have fully paid their power bills to PG&E, including all of Vista's charges.

53.      For these customers, PG&E's EDI files, sent over the internet from California to Houston, Texas, and which show that the customer has not made the required payments for Vista's commodity gas charges, contain intentionally false and misleading information and also fail to disclose material information about Vista's customer accounts.

54.      For example, PG&E has used the internet to falsely report the status of the following accounts to Vista:

a.      By EDI file transmitted on or about July 15, 2013, PG&E notified Vista of a delinquency for customer Roberto L. (SAID ******6587). PG&E continued to notify Vista of on-going delinquencies by this customer on a daily basis until August 16, 2013, or about 40 such occurrences. In fact, the customer had paid in full and PG&E had simply withheld payment to Vista.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

COMPLAINT                                                                                                CASE NO.:

b.      By EDI file transmitted on or about September 2, 2015, PG&E notified Vista of a delinquency for customer Roger S. (SAID ******1870). PG&E continued to notify Vista of on-going delinquencies by this customer on a daily basis until February 2, 2016, when Vista terminated service to the customer. That is, PG&E sent approximately 150 EDI files indicating that this customer was delinquent. PG&E's statements were false when made because the customer had, in fact, timely made all payments to PG&E. On February 2, 2016, Vista contacted Jennifer Yee, who works at the direction of Defendant Chen, inquiring about the balance that PG&E said the customer owed to Vista; Yee by email confirmed that balance. The customer, however, later produced a bill dated January 26, 2016, showing timely, regular payment as well as a zero balance.

c.      By EDI file transmitted on or about June 10, 2013, PG&E notified Vista of a delinquency for customer Jeffery G. (SAID ******8238). PG&E continued to notify Vista of on-going delinquency by this customer on a daily basis until December 12, 2013, when Vista terminated service to the customer. That is, PG&E sent approximately 180 EDI files indicating that this customer was delinquent. PG&E's statements were false when made because the customer had, in fact, timely made all payments to PG&E.

d.      By EDI file transmitted on or about August 31, 2015, PG&E notified Vista of a delinquency for customer Darren R. (SAID ******5485). PG&E continued to notify Vista of on-going delinquency by this customer on a daily basis until March 16, 2016, when Vista terminated service to the customer. That is, PG&E sent nearly 200 EDI files indicating that this customer was delinquent. PG&E's statements were false when made because the customer had, in fact, timely made all payments to PG&E.

e.      By EDI file transmitted on or about September 11, 2015, PG&E notified Vista of a delinquency for customer Linda H. (SAID ******9822). PG&E continued to notify Vista of on-going delinquency by this customer on a daily basis until March 16, 2016, when Vista terminated service to the customer. That is, PG&E sent nearly 190 files indicating that this customer was delinquent. PG&E's statements were false when made because the customer had, in fact, timely made all payments to PG&E.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

- 10 -

55. Vista has cancelled hundreds of its customer accounts for non-payment based on false information about the status of payments received from PG&E.

56. Many of these cancelled accounts had fully paid for the natural gas provided by Vista, but PG&E did not provide those funds to Vista, creating the impression that the customers had not paid the appropriate charges when, in fact, the customers had remitted to PG&E either the full or partial amount due for Vista's charges.

57. Vista has otherwise continued to supply gas to PG&E for Vista's active customers—including those detailed in Paragraphs 54a-e, above—not knowing that PG&E's accounting methods either failed to properly bill Vista's customers for the gas or failed to properly credit to Vista payments received from such customers. In effect, PG&E's Payment Withholding Scheme dupes Vista into supplying gas to PG&E, which PG&E holds and uses knowing that its accounting methods ensure that Vista will not be paid in full for such gas.

58. PG&E's Payment Withholding Scheme additionally benefits PG&E because Vista must pay PG&E transportation and storage fees, which are based on the volume of gas Vista provides for its customers. The transportation and storage fees become stranded costs as a result of the Schemes set forth in this Complaint, since the Schemes prevent Vista from recouping these costs from the affected customers. These fees are significant: Vista pays PG&E over $180,000 per month in transportation fees alone.

59. In other words, PG&E has engaged in a pattern and practice of intentionally withholding money from Vista that PG&E received from Vista customers for natural gas delivered by Vista. PG&E benefits from its deception regardless of the action taken by Vista. If Vista cancels the customers' accounts for non-payment, these customers revert back to PG&E for their natural-gas service. If Vista does not cancel, PG&E continues to receive Vista's gas without paying for it and continues to charge Vista to transport and store the gas.

60. Citing its customer confidentiality policies, PG&E refuses to provide information relative to the payment status of Vista's customers. PG&E only tells Vista the amount of money PG&E has elected to apportion to Vista. Vista must trouble the customer for any other information, such as the amount paid to PG&E or how PG&E has credited the customer's balance.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

- 11 -

61.     In other words, having unlawfully kept money owing to Vista and perpetuated a scheme to engender cancellations from Vista (for alleged non-payment) or to appropriate free gas and storage/transportation fees, PG&E affirmatively prevents Vista from uncovering the scheme by citing "customer privacy" concerns.

**PG&E's Energy Credit Scheme**

62.     PG&E engages in a pattern and practice of offsetting Vista customers' charges for natural gas delivered to Vista's customers with credits from non-Vista related charges.

63.     Neither the parties' contract nor the Gas Rules permit PG&E to offset PG&E's customer credit structure with amounts owed to Vista.

64.     For example, PG&E offers its customers certain subsidies and credits for obtaining some of their electricity through solar panels and similar renewable energy programs. PG&E improperly applies these credits to Vista's gas commodities charges, such that the customer sees either that no payment is due for the month or that an amount is due that will not cover Vista's charges.

65.     In other words, PG&E accepts gas from Vista for these customers and delivers gas to these customers on Vista's behalf, but informs the customer that s/he does not need to pay any amount. Effectively, PG&E defrauds Vista of its gas and uses it to subsidize its customer credit programs.

66.     Some specific instances of this conduct include:

a.      By EDI file transmitted on or before August 5, 2013, PG&E notified Vista that it had billed customer Gregory P. (SAID \*\*\*\*\*\*3010) for Vista's gas commodity charges. In fact, PG&E had applied an energy credit, indicating to the customer that he owed Vista nothing. By EDI files transmitted on or about September 4, October 4, November 1, December 4, 2013, and January 3, 2014, PG&E similarly sent Vista EDI files stating that it had billed and was attempting to collect Vista's charges, when in reality PG&E's bills informed the customer that he owed nothing due to operation of the energy credit.

b.      By EDI file transmitted on or before August 21, 2013, PG&E notified Vista that it had billed customer Ray S. (SAID \*\*\*\*\*\*6638) for Vista's gas commodity charges. In fact, PG&E had applied an energy credit, indicating to the customer that he owed Vista nothing.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

- 12 -

By EDI file transmitted on or about September 18, 2013, PG&E notified Vista that it had again billed and was attempting to collect Vista's charges when in reality PG&E's bills informed the customer that he owed nothing due to operation of the energy credit.

c.      By EDI file transmitted on or before April 10, 2013, PG&E notified Vista that it had billed customer Elizabeth W. (SAID ******6230) $16.01 for Vista's gas commodity charges. In fact, PG&E had applied an energy credit, indicating to the customer that she owed Vista nothing. By EDI files transmitted on or about May 9 and June 6, 2013, PG&E similarly notified Vista that it had again billed and was attempting to collect Vista's charges when in reality PG&E's bills informed the customer that she owed nothing due to operation of the energy credit.

d.      By EDI file transmitted on or about December 23, 2013, PG&E notified Vista that it had billed Wiletta C. (SAID ******4307) $36.66 for Vista's gas commodity charges. In fact, PG&E had applied an energy credit, indicating to the customer that she owed Vista nothing. By EDI files transmitted on or about January 24, February 24, March 24, April 24, May 27, and June 23, 2014, PG&E similarly notified Vista that it had again billed and was attempting to collect Vista's charges when in reality PG&E's bills informed the customer that she owed nothing due to operation of the energy credit.

e.      By EDI file transmitted on or about March 6, 2014 PG&E notified Vista that it had billed Guadalupe L. (SAID ******4948) $26.11 for Vista's gas commodity charges. In fact, PG&E had applied an energy credit, indicating to the customer that she owed Vista nothing. By EDI files transmitted on or about April 9, May 6, June 6, July 7, August 4, September 4, and October 7, 2014, PG&E similarly notified Vista that it had again billed and was attempting to collect Vista's charges when in reality PG&E's bills informed the customer that she owed nothing due to operation of the energy credit.

f.      By EDI file transmitted on or about July 15, 2014 PG&E notified Vista that it had billed Neita W. (SAID ******5010) $7.12 for Vista's gas commodity charges. In fact, PG&E had applied an energy credit, indicating to the customer that she owed Vista nothing. By EDI files transmitted on or about August 8, September 11, October 10, November 11, and

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

COMPLAINT                                                                                                    CASE NO.:

December 9, 2014 as well as January 12, February 13, and March 16, 2015, PG&E similarly notified Vista that it had again billed and was attempting to collect Vista's charges when in reality PG&E's bills informed the customer that the customer owed nothing due to operation of the energy credit.

g.      By EDI file transmitted on or about September 23, 2013 PG&E notified Vista that it had billed Jeffrey S. (SAID ******1894) $11.03 for Vista's gas commodity charges. In fact, PG&E had applied an energy credit, indicating to the customer that he owed Vista nothing. By EDI files transmitted on or about October 23, November 21, and December 23, 2013 as well as January 24, February 24, March 24, April 24, May 27, and June 23, 2014, PG&E similarly notified Vista that it had again billed and was attempting to collect Vista's charges when in reality PG&E's bills informed the customer that he owed nothing due to operation of the energy credit.

h.      By EDI file transmitted on or about September 10, 2014 PG&E notified Vista that it had billed Elizabeth W. (SAID ******6230) $14.66 for Vista's gas commodity charges. In fact, PG&E had applied an energy credit, indicating to the customer that she owed Vista nothing. By EDI files transmitted on or about October 7, November 3, and December 9, 2014, PG&E similarly notified Vista that it had again billed and was attempting to collect Vista's charges when in reality PG&E's bills informed the customer that he owed nothing because of operation of the energy credit.

67.      In each case set forth above, PG&E's EDI file informed Vista that it billed and was attempting to collect Vista's gas commodity charges when, in fact, PG&E had applied a credit such that the customer was told not to pay Vista anything. Further, PG&E's EDI file informed Vista that the customer was not paying Vista's gas commodity charges when, in fact, PG&E had induced the unwitting customer into not paying Vista.

68.      Vista has cancelled hundreds of its customer accounts for non-payment based on false information about the status of payments received from PG&E.

69.      Vista has otherwise continued to supply gas to PG&E for Vista's active customers—including those detailed in Paragraphs 66a-h, above—not knowing that PG&E had not only failed to

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

- 14 -

bill the customer but also affirmatively told the customer that s/he need not pay Vista for its services. In effect, PG&E's Energy Credit Scheme dupes Vista into supplying gas to PG&E, which PG&E holds and uses knowing that its accounting methods ensure that Vista will not be paid for such gas and reducing the amount of credit that PG&E owes to the customer.

70.     PG&E's Energy Credit Scheme additionally benefits PG&E because Vista must pay PG&E transportation and storage fees, which are based on the volume of gas Vista provides for its customers. The transportation and storage fees become stranded costs as a result of the Schemes set forth in this Complaint, since the Schemes prevent Vista from recouping these costs from the affected customers. These fees are significant: Vista pays PG&E over $180,000 per month in transportation fees alone.

71.     In other words, PG&E has engaged in a pattern and practice of intentionally using Vista's gas and gas commodity charges to underwrite PG&E's energy credit program. PG&E's Energy Credit Scheme also caused Vista to cancel customers (for alleged non-payment). These customers then default to PG&E's gas commodity service.

72.     Citing its unlawful and unregulated customer confidentiality policies, PG&E refuses to provide information relative to the payment status of Vista's customers. That is, PG&E will only tell Vista the amount of money PG&E has elected to apportion to Vista. Vista must trouble the customer for any other information, such as the amount paid to PG&E or how PG&E has credited the customer's balance.

73.     In other words, having kept money owing to Vista and perpetuated a scheme to engender either cancellations from Vista (for alleged non-payment) or free gas from Vista (when Vista continues to supply the customer), PG&E affirmatively prevents Vista from uncovering the scheme by citing "customer privacy" concerns.

**The Reversal Scheme**

74.     PG&E has engaged in a pattern and practice of withholding amounts due to Vista where PG&E claims that the funds are due for "reversals."

75.     PG&E's EDI files contain information showing which accounts have "reversed."

76.     Some specific examples of this include:

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

COMPLAINT                                                                    CASE NO.:

a.      On March 6, 2015, PG&E billed Patricio O. (SAID ******9662) $27.38 for Vista's services, with a balance in that same amount. By EDI file sent on or about March 5, 2015, PG&E informed Vista that the customer made five payments in the amount of $24.00, $44.67, $44.71, $55.78, and $66.65. That same day, PG&E "reversed" payments in the amount of $66.65, $55.78, $55.78, $44.71, $44.67, and $24.00, reporting to Vista that the customer owed it $83.16. By EDI file sent on or about March 30, 2015, PG&E informed Vista that the customer made payments of $5.20, $22.18, $44.67, leaving a balance of $55.78. By EDI file sent on or about April 3, 2015, PG&E informed Vista that the customer made five payments in the amount of $24.00, $44.67, $44.71, $55.78, and $66.65. That same day, PG&E "reversed" payments in the amount of $66.65, $55.78, $44.71, $44.67, and $24.00, reporting to Vista that the customer owed it $71.93. The transmission of other EDI files containing similar reversals continued into November 2015. Service to the customer terminated in August 2015 based on PG&E's false representations regarding the customer's outstanding balance.

b.      On November 6, 2015, PG&E billed Carlton K. (SAID No. ******2331) $13.54 for Vista's gas commodity services, with a balance of $37.66. By EDI file sent on or about November 3, 2015, PG&E "reversed" five payments made months previously in the amounts $99.37, $47.16, $41.43, $35.76, and $11.53, leaving a balance of $272.91. Service to the customer terminated in November 2015 based on PG&E's false representations regarding the customer's outstanding balance.

c.      By EDI file sent on or about February 22, 2013, PG&E applied a payment of $215.85 to Marie M. (SAID ******3010) for Vista's gas services. By EDI file sent on or about March 7, 2013, PG&E "reversed" this same amount. By EDI file sent on or about March 7, 2013, PG&E applied a payment of $273.88 to this same account for Vista's gas services. By EDI file, sent on or about April 4, 2013, PG&E "reversed" and applied payment in this same amount. By EDI file sent on or about May 7, 2013, PG&E re-applied and "reversed" this same payment, only to re-apply and "reverse" it again on or about June 4, 2013. PG&E then reversed this same payment amount on or about June 4, 2013 and July 8.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

COMPLAINT                                                                                      CASE NO.:

d.      By EDI file sent on or about November 22, 2013, PG&E applied a payment of $197.30 to Lorena H. (SAID ******3036) for Vista's gas services. By EDI file sent on or about December 2, 2013, PG&E "reversed" this same amount. By EDI file sent on or about February 20, 2014, PG&E applied a payment to this account in the amount of $86.75, only to reverse that amount by EDI file dated on or about March 21, 2014. By EDI file sent on or about February 21, 2014, PG&E applied a payment to this account in the amount of $51.85, only to reverse that amount by EDI file dated on or about March 21, 2014. By EDI file sent on or about February 21, 2014, PG&E applied a payment to this account in the amount of $126.83, only to reverse that amount by EDI file dated on or about March 21, 2014.

e.      By EDI file sent on or about August 4, 2014, PG&E applied a payment of $35.75 to Neita W. (SAID ******5010) for Vista's gas services. By EDI file sent on or about September 10, 2014, PG&E "reversed" this same amount. By EDI file sent on or about January 9, 2015, PG&E applied a payment to this account in the amount of $16.24, only to reverse that amount by EDI file dated on or about February 9, 2015. By EDI file sent on or about March 10, 2015, PG&E applied a payment to this account in the amount of $10.98, only to reverse that amount by EDI file dated on or about April 9, 2015. By EDI file sent on or about March 25, 2015, PG&E applied a payment to this account in the amount of $215.71, only to reverse that amount by EDI file dated on or about April 9, 2015.

f.      By EDI file sent on or about March 11 2014, PG&E applied a payment of $301.52 to Carmen C. (SAID ******9217) for Vista's gas services. By EDI file sent on or about March 17, 2014, PG&E "reversed" this same amount. By EDI file sent on or about April 10, 2014, PG&E applied a payment to this account in the amount of $350.71, only to reverse that amount by EDI file dated on or about April 15, 2014.

g.      By EDI file sent on or about April 30, 2013, PG&E applied a payment of $25.56 to Shante Janae W. (SAID ******6582) for Vista's gas services. By EDI file sent on or about May 7, 2013, PG&E "reversed" this same amount. By EDI file sent on or about October 14, 2013, PG&E applied a payment to this account in the amount of $278.88, only to reverse that amount by EDI file dated on or about October 22, 2013. By EDI file sent on or about

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

- 17 -

COMPLAINT                                                                CASE NO.:

December 2, 2013, PG&E applied a payment to this account in the amount of $501.39, only to reverse that amount by EDI file dated on or about December 4, 2013.

h.      By EDI file sent on or about March 28, 2014, PG&E applied a payment of $34.15 to Gregory P. (SAID ******3010) for Vista's gas services. By EDI file sent on or about June 3, 2014, PG&E "reversed" this same amount. By EDI file sent on or about September 17, 2015, PG&E applied a payment to this account in the amount of $22.08, only to reverse that amount by EDI file dated on or about October 1, 2015.

i.      By EDI file sent on or about March 20, 2015, PG&E applied payments of $18.81, $25.48, $21.69, $3.39 and $2.60 to Marcia F. (SAID ******5796) for Vista's gas services. That same day, PG&E "reversed" payments in the amount of $18.81, $21.69, $3.39, and $2.60. On April 21, 2015, PG&E "reversed" the payment of $25.48. By EDI file sent on or about May 19, 2015, PG&E applied payments of $21.69, 17.27, and $2.60 to this account for Vista's gas services.  That same day, PG&E "reversed" payments in the amount of $21.80, $21.69, $18.81, and $2.60, reporting to Vista that the customer owed it $95.98.

77.     In January 2015, PG&E permanently "reversed" thousands of Vista customers, representing about $390,000.00 in reversals.  In February 2015, PG&E "reversed" another $30,000 worth of customers.

78.     Similar to some of the examples in Paragraphs 76a-i, PG&E backdated many of these reversals, as though the reversal had occurred months beforehand.

79.     According to the EDI files sent by PG&E many of the customers reversed by PG&E had made payments to Vista in the prior months.

80.     PG&E has provided no explanation for this practice, and neither the contract between the parties nor the Gas Rules permit it.

81.     PG&E's EDI files showing a reversal falsely informed Vista that these customers had "reversed," when in fact, they had not.

82.     Alternatively, PG&E's EDI files showing payments were false because they stated that the customer had paid Vista when, in fact, the customer had not.

83.     PG&E's actions have damaged Vista by eroding its customer base, denying it current

- 18 -

COMPLAINT                                                                      CASE NO.:

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

and future revenue. PG&E's actions have also damaged Vista by disrupting its cash flow, which impacts nearly every aspect of its business. For example, Vista cannot accurately project revenue or manage its credit facilities when PG&E mercurially reverses customers or offsets payments. The Schemes similarly interfere with Vista's relationship with its customers, who become understandably angry and frustrated when their bills do not accurately reflect the balance owed to Vista, resulting in significant additional expenses and penalties imposed on Vista.

84.     The Schemes also render near-impossible Vista's ability to perform basic business functions, such as determining and reporting bad debt because the Scheme conceal from Vista which balances have been paid (but not remitted to Vista), which customers have been told not to pay Vista at all (due to the Energy Credit Scheme) and which accounts and payments have been unlawfully reversed back to PG&E (the Reversal Scheme).

85.     The Schemes, moreover, diminish competition within the gas commodity market as a whole. Between 2012 and 2014—before implementation of the Schemes—the firm pipeline capacity (or "load") for all CTAs grew from approximately 12% share of the total load to approximately 19%. Since implementation of the Schemes, however, the load has steadily and precipitously decreased to 15.4% of the total load.

86.     Further, the Schemes have resulted in increased consumer prices despite an ample supply of natural gas and despite decreasing wholesale prices. Between 2014 and present, the monthly California price of natural gas delivered to residential consumers has *increased* from $10 per thousand cubic feet to $12 per thousand cubic feet. During that same time period, the Citygate price for natural gas in California has *decreased* from approximately $6.00 per thousand cubic feet to approximately $3.00 per thousand cubic feet. In other words, consumers in California are paying 20% more for natural gas since implementation of the Schemes even though the Citygate price is 50% less than it was in 2014.

87.     Perhaps more important, the Schemes prohibit customers from participating in alternative products, such as fixed price, unlimited usage pricing, winter fixed rates, and guaranteed lower summer rates.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

COMPLAINT                                                                                                  CASE NO.:

88.     PG&E, as a corporation, does not acknowledge the Schemes. For example, on April 30, 2015, David Reyes (Defendant Robinson's subordinate) admitted in testimony, with PG&E's in-house counsel present, the facts underlying the Energy Credit Scheme (i.e., that non-cash credits are used to "mask" a CTA's charges). The day before, on April 29, 2015, PG&E's in-house counsel averred to the CPUC that PG&E does *not* apply non-cash credits to a CTA's charges. PG&E's in-house counsel have taken no steps to correct or reconcile either statement.

89.     Even after its own employee testified about the Schemes, PG&E has done little or nothing to curtail the unlawful acts of the Individual Defendants. PG&E profits from these acts in several ways: by charging Vista transportation and storage fees; by increasing the bad debt of its competitors; and by reducing its own liability for mandatory credits. Finally, PG&E is able to charge consumers higher prices despite the falling Citygate cost of natural gas.

## CAUSES OF ACTION
### FIRST CAUSE OF ACTION
**(Violation of the Racketeer and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968)**

90.     Vista incorporates herein by reference all allegations set forth in Paragraphs 1 through 89 of this Complaint.

## FACTUAL ALLEGATIONS COMMON TO ALL RICO COUNTS
### RICO COUNT I
**(Violation of RICO § 1962(c))**

91.     The allegations of paragraphs 1 through 90 are incorporated herein by reference.

92.     This Count is against Defendants Torres, Robinson, and Chen (the "Count I Defendants").

93.      Consolidated Billing is an enterprise engaged in and whose activities affect interstate commerce. The Count I Defendants engaged in the predicate act of wire fraud by way of the Payment Withholding Scheme, the Energy Credit Scheme and the Reversal Scheme in furtherance of the Consolidated Billing enterprise.

94.     The Count I Defendants are employed by or associate with the enterprise.

95.     The Count I Defendants agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiff.

COMPLAINT                                                                                      CASE NO.:

*Holland & Knight LLP*
*400 South Hope Street, 8th Floor*
*Los Angeles, CA  90071*
*Tel: 213.896.2400*
*Fax: 213.896.2450*

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

96.     Specifically, Defendant Robinson directs her department to provide Vista with the Electronic Data Interchange ("EDI") files containing the false information as detailed in Paragraphs 54, 66 and 76. Defendant Robinson directs her department to transmit this false information through interstate wires (i.e., over the internet and telephone network) to Vista in Houston, Texas. Defendant Robinson further directs her department to deceive Vista when it enquires about these schemes, such as Robinson's subordinate, David Reyes, did in September 2013.

97.     Defendant Torres oversees and directs the employees in Customer Operations to withhold payments from Vista, as described *supra* in Paragraphs 54, 66 and 76. Defendant Torres similarly directs the employees in Customer Operations to apply PG&E energy credit programs (e.g., for solar panels, etc.) to Vista's charges, as described *supra* in Paragraph 66. Defendant Torres directs the employees in Customer Operations to apply reversals in the manner described in Paragraph 76. Finally, Defendant Torres directs the employees in Customer Operations to use customer care calls originating from the Payment Withholding Scheme and the Energy Credit Scheme to inform Vista customers that they do not and will never pay less with Vista's services and to convince the customer to drop Vista.

98.     Defendant Chen oversees and manages the CTA program. Defendant Chen manages and implements the Payment Withholding Scheme, the Energy Credit Scheme, and the Reversal Scheme. Specifically, Defendant Chen directs and coordinates these schemes between Defendant Robinson and Defendant Torres.

99.     The Payment Withholding Scheme, the Energy Credit Scheme, and the Reversal Scheme constitute wire fraud in violation of 18 U.S.C. § 1343. Specifically, each of these Schemes concern the transmission of false information in the EDI files, with the intent of either withholding payments from Vista, defrauding Vista of its gas commodity to subsidize PG&E's customer credit program, or reducing Vista's customer base.

100.    The Payment Withholding Scheme, the Energy Credit Scheme, and the Reversal Scheme involve use of interstate wires (i.e., the internet) to transmit the EDI files to Vista.

101.     The Count I Defendants have evidenced specific intent to defraud Vista because the practical effect of the Schemes is that the customer defaults to PG&E's gas commodity service. The

- 21 -

Count I Defendants have similarly evidenced specific intent to defraud Vista because another practical effect of the Schemes is to withhold money from Vista or to subsidize PG&E's other business units. Finally, the Count I Defendants evidence specific intent to defraud Vista since they have undertaken efforts to conceal the Schemes.

102.    The acts set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

103.    This pattern poses the threat of continuing. The first predicate act of the Reversal Scheme, for example, dates back to 2013 and continues through December 2014. The Count I Defendants deploy the Payment Withholding Scheme and the Energy Credit Scheme each month with Vista's customers via transmission of the false EDI files.

104.    As a direct and proximate result of the Count I Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Vista has been injured in its business and property in that the Count I Defendants defraud Vista of money or gas commodities and have eroded Vista's customer base.

105.    WHEREFORE, Plaintiff requests that this Court enter judgment against the Count I Defendant(s) as follows:

    a.   Actual damages in an amount to be proven at trial, but estimated to be in the millions of dollars;

    b.   Treble damages and attorneys' fees and costs as provided in 18 U.S.C. § 1964(c); and

    c.   Any other relief the Court determines is appropriate.

### RICO COUNT II
### (Violation of RICO § 1962(d))

106.    The allegations of paragraphs 1 through 105 are incorporated herein by reference.

107.    This Count is against Defendants Torres, Robinson, and Chen (the "Count II Defendant(s)").

108.    As set forth above, the Count II Defendants agreed and conspired to violate 18 U.S.C. § 1962(c).

109.    The Count II Defendants have intentionally conspired and agreed to directly and indirectly conduct and participate in the conduct of the affairs of the enterprise through a pattern of

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

COMPLAINT                                                                                    CASE NO.:

racketeering activity.

110.     The Count II Defendants knew that their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the schemes described above. That conduct constitutes a conspiracy to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d).

111.     As a direct and proximate result of the Count II Defendants' conspiracy to commit racketeering activities and violations of 18 U.S.C. § 1962(c), Vista has been injured in its business and property in that the Count II Defendants defrauded Vista of money or gas commodities and have eroded Vista's customer base.

112.     WHEREFORE, Plaintiff requests that this Court enter judgment against the Count II Defendants as follows.

    a.   Actual damages in an amount to be proven at trial, but expected to be in the millions of dollars;

    b.   Treble damages and attorneys' fees and costs as provided in 18 U.S.C. § 1964(c); and

    c.   Any other relief the Court determines is appropriate.

## SECOND CAUSE OF ACTION
### (Respondeat Superior/Agency)

113.     Vista incorporates herein by reference all allegations set forth in Paragraphs 1 through 112 of this Complaint.

114.     PG&E is distinct from the Consolidated Billing RICO enterprise operated by Robinson, Chen, and Torres (the "Individual Defendants"). Specifically, Consolidated Billing is not part of PG&E's voluntary business model nor is it intended to be a profitable line of business. Indeed, PG&E neither officially condones nor acknowledges the existence of the Schemes. PG&E officially denies, for example, the existence of the Energy Credit Scheme (as its in-house lawyers did on April 29, 2015 in their averments before the CPUC), even though the Individual Defendants and their employees openly acknowledge the practice and despite the fact that PG&E benefits from it.

115.     PG&E has benefited from the racketeering activities of the Individual Defendants. PG&E charges Vista transportation and storage fees for natural gas. The Schemes increase the bad

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

COMPLAINT                                                                     CASE NO.:

debt of PG&E's competitors and increase PG&E's market share for core gas customers. Most important, the Schemes reduce PG&E's own liability for any mandatory credit. Finally, as a result of the Schemes, PG&E is able to charge consumers higher prices than it otherwise could, even while the Citygate cost of natural gas falls.

116.    The Individual Defendants committed the racketeering activities within the time and space limits of their employment with PG&E. That is, the Individual Defendants committed the racketeering activities while they were working in PG&E's offices and with PG&E's systems. On information and belief, the Individual Defendants were motivated to commit the racketeering activities for the purpose of benefiting PG&E financially through increased profit and market share, and thereby benefitting themselves as the employees responsible.

117.    The racketeering activities were of a kind that the Individual Defendants were hired by PG&E to perform legitimately. That is, each Individual Defendant used his/her position at PG&E to perpetuate the Schemes by committing the predicate acts under the auspices of their usual job responsibilities. For example, Defendant Torres oversees the employees in Customer Operations but directs them to withhold payments from Vista in furtherance of the Payment Withholding Scheme, as described *supra* in Paragraphs 54, 66 and 76. Defendant Torres similarly oversees the employees in Customer Operations but directs them to apply PG&E energy credit programs (e.g., for solar panels, etc.) to Vista's charges in furtherance of the Energy Credit Scheme, as described *supra* in Paragraph 66. Defendant Torres also directs the employees in Customer Operations to apply reversals in the manner described in Paragraph 76 in furtherance of the Reversal Scheme. Finally, Defendant Torres directs the employees in Customer Operations to use customer care calls to inform Vista customers that they do not and will never pay less with Vista's services and to convince the customer to drop Vista, in furtherance of the Payment Withholding Scheme and the Energy Credit Scheme. Similarly, Defendants Robinson and Chen direct the employees in ESP Services and EDI Operations to compile and send the EDI files over the wires containing the false information set forth in Paragraphs 54, 66 and 76.  None of the Individual Defendants would be able to perpetuate the Schemes without the authority vested in them through their positions at PG&E.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

- 24 -

118.     PG&E eventually learned of the Schemes, as evidenced by the presence of its in-house counsel during the testimony of David Reyes on April 30, 2015 but, nonetheless, does nothing to stop them. As their employer, PG&E not only supplied the Individual Defendants with the means to perpetuate the Schemes, but PG&E could have stopped the Individual Defendants and, to date, has not done so.

119.     WHEREFORE, Plaintiff requests that this Court enter judgment against PG&E as follows:

      a.   Actual damages in an amount to be proven at trial, but expected to be in the millions of dollars;

      b.   Treble damages and attorneys' fees and costs as provided in 18 U.S.C. § 1964(c); and

      c.   Any other relief the Court determines is appropriate.

### THIRD CAUSE OF ACTION
### (Attempt to Monopolize in Violation of the Sherman Act § 2, 15 U.S.C. § 2)

120.     Vista incorporates herein by reference all allegations set forth in Paragraphs 1 through 119 of this Complaint.

121.     A market exists for the provision of natural gas to Core Customers in Northern California. The geographical boundaries of this market are Eureka in the north to Bakersfield in the south, and from the Pacific Ocean to the Sierra Nevada (the "Relevant Geography"). Core Customers are all residential customers within the Relevant Geography regardless of load size, commercial customers with annual loads below 250,000 therms, and those commercial customers with annual loads above 250,000 therms who elect to receive the higher reliability associated with core service. The relevant product in this market is natural gas, which is a fossil fuel extracted from the earth and largely comprised of methane and other hydrocarbons. The natural gas sold to residential and small business customers for use as an energy source is fungible, may be interchanged regardless of the provider, and is not distinguishable by quality. It can be used for heating, cooking, and other household applications.

122.     PG&E is the traditional utility and, until 1991, held a state-sanctioned monopoly in the Relevant Geography. Consequently, PG&E currently owns and operates all the infrastructure that

COMPLAINT                                                                      CASE NO.:

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

physically stores and transports natural gas to Core Customers within the Relevant Geography. As a result of this monopoly, 100% of the Core Customers receive their gas via pipes, meters, and other facilities owned and operated by PG&E.

123.    PG&E also holds a near-monopoly on natural gas billing and collections operations within the Relevant Geography. Nearly 100% of the Core Customers in the Relevant Geography receive a monthly utility bill from PG&E, whether for natural gas, the transportation of those services, or both.

124.    The CTAs compete with PG&E to sell natural gas to Core Customers within the Relevant Geography. Approximately twenty-two CTAs operate in the Relevant Geography using PG&E's infrastructure.

125.    Recognizing that establishing utility billing and collection services created an unfair barrier to entry, the CPUC requires PG&E to share its billing and collection services with CTAs. Approximately 18 CTAs use PG&E as their billing and collections agents (i.e., those CTAs use PG&E Consolidated Billing), paying PG&E about $.70 per customer per month for this service. No CTA retails to all Core Customers (i.e., both residential and small commercial) without using PG&E Consolidated Billing. A CTA like Vista cannot practically or reasonably establish its own billing and collection services within the Relevant Geography and continue to offer natural gas to Core Customers at competitive prices. Thus, without the use of PG&E's billing and collections services, CTAs like Vista cannot compete with PG&E in the natural gas market. Consequently, PG&E's billing and collections services constitute an essential facility. Though the CPUC has compelled PG&E to share its billing and collection services, the CPUC lacks the effective power to regulate the scope, terms, and manner in which those services are provided to CTAs and has failed to prevent the predatory Schemes from occurring.

126.    Because the number of Core Customers varies and their individual gas usage is difficult to encapsulate, an entity's given market share is typically measured in terms of "load"— the percentage of the overall natural gas demand in the Relevant Geography the entity supplies.  In 2012, PG&E supplied 88% of the total load to Core Customers in the Relevant Geography, while all CTAs combined supplied 12%. By 2014, the CTAs increased their market share to 19%, while PG&E's

- 26 -

share decreased to 81% of the total load to Core Customers in the Relevant Geography.  Since implementation of the Schemes, however, PG&E has augmented its market share to 85%.

127.    PG&E sets the price for its natural gas to Core Customers on a monthly basis by application of a regulated formula. While the formula itself does not change, PG&E exercises discretion over variables, such as calculation of its purchase price, expenses, overcharges, and the like, to include in the formula. PG&E publishes this price once per month, typically around the twenty-fifth day, without prior approval from the CPUC. CTAs using PG&E's billing and collections must provide their monthly price to PG&E by the first of each month.

128.    PG&E has committed overt predatory and exclusionary acts demonstrating its specific intention to destroy competition for natural gas commodity service to Core Customers in the Relevant Geography by providing its billing and collections services in a fraudulent, unfair, unreasonable, and discriminatory manner, denying the CTAs fair and reasonable access to an essential facility. Specifically, PG&E uses its role as the CTAs' billing agent to withhold money due and owing to the CTAs by operation of the acts set forth in the Payment Withholding Scheme, which misleads the CTA into believing that the customer is not paying. The Energy Credit Scheme deceives both the customer into believing that no payment is due to the CTA and the CTA into believing that the customer willfully is not paying. The CTAs, including Vista, either disconnect these customers, defaulting them back to PG&E's gas commodity service, or attempt collection efforts which frustrate the customer into returning to PG&E's service. Finally, with the Reversal Scheme, PG&E simply disconnects Core Customers within the Relevant Geography from the CTAs' natural gas service and returns them to PG&E's natural gas service. These fraudulent, unfair, unreasonable, and discriminatory Schemes lack any legitimate business justification and evidence PG&E's specific intent to destroy competition in the natural gas market.  Such Schemes are perpetrated against the CTAs not by competitive zeal, but by anticompetitive malice.

129.    PG&E, therefore, intentionally leverages its monopoly in its billing-and-collections services to expand its market share in the deregulated natural gas commodity market to Core Customers.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

COMPLAINT                                                                                          CASE NO.:

130.    The Schemes have several anti-competitive results. First, the Schemes significantly increase operating expenses for CTAs. For example, CTAs must expend large sums—typically millions of dollars annually—on marketing costs just to maintain their customer base as a result of the Reversal Scheme. Quite literally, the Schemes eliminate the CTAs customer base nearly as quickly as a CTA, spending millions of dollars each year, can build it up. CTAs have no ability to expand their output.

131.    In addition, CTAs have large carrying costs because the Payment Withholding Scheme and the Energy Credit Scheme ensure that the CTA will be either paid months late or not at all (that is, the CTAs must buy the natural gas and expend money storing and transporting it while PG&E prohibits payment from the customer).

132.    The Schemes are perpetuated against all CTAs using PG&E's billing and collections services and have resulted in significant loss of the CTA's market share and increased costs to the CTAs. Vista alone has lost about half of its customers as a result of the Schemes. On May 28, 2016, another competitor, United Energy Trading, LLC filed a Complaint in the Northern District of California (styled *United Energy Trading, LLC v. Pacific Gas and Electric*, Case No. 3:15-cv-02383-RS) alleging, *inter alia*, that it also lost tens of thousands from its peak of 65,000 Core Customers in the Relevant Geography as a result of the Schemes. On June 9, 2016, another competitor, North Star Gas Company d/b/a YEP, filed a Complaint in the Northern District of California (styled *North Star Gas Co. v. Pacific Gas and Electric*, Case No. 3:15-CV-02575-HSG) alleging, *inter alia*, that it has similarly lost tens of thousands from its peak of 54,000 Core Customers in the Relevant Geography as a result of the Schemes.  Similarly, other CTAs, such as Tiger Energy, have reported that PG&E carries out the Schemes against their Core Customers in the Relevant Geography and that, similar to Vista, United Energy and North Star, each CTA has reported loss of customer and market share.

133.    In short, the Schemes deny the CTAs fair and reasonable access to an essential facility controlled exclusively by PG&E, drive up the CTAs' expenses and, by winnowing their customer base, reduce the CTAs' effective economies of scale, preventing the CTAs from pricing natural gas as competitively against PG&E's price as they once could since, no matter how low Vista sets it prices, PG&E can use Consolidated Billing to reverse customers back to itself, or dupe Vista into

COMPLAINT                                                                                         CASE NO.:

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

terminating the service, or falsely convenience their customers to leave Vista's gas services and return to PG&E's services.

134.    Put another way, the predatory Schemes force CTAs into a Hobson's Choice: remain with PG&E's billing and collections services, operated in an predatory manner; or institute separate billing-and-collections, already determined to be a barrier to entry.

135.    Indeed, as a result of the Schemes, PG&E increased its share of the load—and, therefore, its share of the natural gas market for Core Customers in the Relevant Geography—from 81% to 85% in just the two years since implementing the predatory Schemes.

136.    Consumers themselves have been harmed by PG&E's anticompetitive conduct since PG&E has been able to raise its prices without fear of competition from the CTAs. For example, Core Customers have experienced a 20% increase in gas prices at a time when wholesale gas prices have decreased by 50%, as set forth in Paragraph 86.

137.    The Schemes pose a dangerous probability of allowing PG&E to achieve market power. The Schemes have erected barriers to entry and expansion in the Relevant Geography and resulted in a reduction in competition in the retail natural gas commodity market. Several companies that retail natural gas in other states, such as Colorado-based Aurora NG, will not attempt entry as a result of PG&E's predatory practices. Other CTAs have allowed the Reversal Scheme to dwindle their customer base for ultimate withdrawal from the market. One such CTA has seen its customer base decline from about 40,000 to just around 5,000 since January 2015; this company will not invest in acquiring additional customers because of the Schemes. PG&E's schemes have made entry and expansion unprofitable, despite the fact that PG&E's gas supply is priced above competitive levels, due to the increased costs of marketing, customer retention, and carrying costs.

138.    WHEREFORE, Plaintiff requests that this Court enter judgment against PG&E as follows:

a.    Actual damages in an amount to be proven at trial, but expected to be in the millions of dollars;

b.    Treble damages and attorneys' fees and costs as provided in 15 U.S.C. § 15; and

c.    Any other relief the Court determines is appropriate.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

COMPLAINT                                                    CASE NO.:

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

## FOURTH CAUSE OF ACTION
### (Breach of Fiduciary Duty)

139.     Vista incorporates herein by reference all allegations set forth in Paragraphs 1 through 138 of this Complaint.

140.     As set forth above, because Vista has selected the option of Consolidated PG&E Billing, PG&E acts as Vista's billing and collections agent for all of Vista's customers in PG&E's service area.

141.     Specifically, PG&E calculates the amounts owed by Vista's customers for natural gas, sends a bill containing Vista's charges to Vista's customers, collects payments from Vista's customers, and remits (or is supposed to remit) those amounts to Vista.

142.     Under this arrangement, PG&E represents Vista with respect to billing and collection issues to Vista's customers and is entrusted with the duty to receive and disburse Vista's money and to keep accurate records of these transactions. Because they are Vista's customers, Vista has a right to control and supervise PG&E's actions with respect to Vista's billing and collections activities.

143.     Accordingly, PG&E is Vista's agent under Cal. Civ. Code § 2295, and owes Vista a fiduciary duty of loyalty.

144.     PG&E has retained moneys that it collected from Vista's customers for its own benefit and has failed and refused to turn those amounts over to Vista. This is a breach of PG&E's duty of loyalty to Vista.

145.     In addition, PG&E has used its special relationship of trust as Vista's billing and collections agent as well as its position as the default monopoly natural gas provider to improperly compete with Vista, including making false representations to Vista about the status of its customer accounts and also encouraging Vista's customers to cancel Vista's services so that the customer will revert back to PG&E.

146.     Vista has been damaged by PG&E's breach of its fiduciary duty to Vista, including amounts that PG&E has wrongfully withheld from Vista and customers terminated without reason due to PG&E's fraudulent representations to Vista.

147.     PG&E's breach of its duty of loyalty and fraud were done intentionally and with

COMPLAINT                                                                 CASE NO.:

malice designed to injure Vista.  Specifically, as set forth above in Paragraphs 45 through 89, PG&E made repeated false statements to Vista about the amounts owed and paid by Vista's customers, and wrongfully allocated Vista customer payments to PG&E's own charges.

148.    PG&E's breach of its duty of loyalty and fraud were made with the advance knowledge and authorization of William H. Chen, the manager of PG&E's Account Services group for core transport agents.

149.    WHEREFORE, Plaintiff requests that this Court enter judgment against PG&E as follows:

a.    Actual damages in an amount to be proven at trial, but expected to be in the millions of dollars;

b.    Exemplary and punitive damages as permitted by law;

c.    Its attorneys' fees and costs incurred as permitted by law; and

d.    Any other relief the Court deems appropriate.

### FIFTH CAUSE OF ACTION
### (Intentional Misrepresentation)

150.    Vista incorporates herein by reference all allegations set forth in Paragraphs 1 through 149 of this Complaint.

151.    PG&E made repeated, intentionally false statements to Vista every time that PG&E used the wires to transmit information about Vista's customer accounts which reflected that Vista's customers had not paid for all of Vista's charges, but where in fact the customer had either fully paid for Vista's charges or where PG&E told the customer not to pay Vista's charges.

152.    These false statements were made as set forth in Paragraphs 54, 66, and 76 above and included affirmative false statements as to whether a customer had paid for Vista's charges, as well as the intentional concealment of the fact that the customer had, in fact, paid Vista's energy charges, but that PG&E retained those monies and applied them to its own customer accounts.

153.    PG&E intended that Vista rely on PG&E's false statements and intentional concealment. Vista justifiably relied on PG&E's false statements about its customers by sending

COMPLAINT                                                                              CASE NO.:

collection and disconnection notices to these customers when, in fact, the customer's Vista charges were fully paid to PG&E.

154.   PG&E's intentional false statements have caused Vista damages, including lost revenues and income unlawfully withheld by PG&E, lost customers, lost market share, out of pocket costs associated with trying to collect customer accounts which PG&E falsely represented were not paid, and costs associated with trying to repair customer relationships for customers which Vista mistakenly attempted to collect from when in fact the customer had fully paid all of Vista's charges but PG&E had wrongfully withheld those amounts from Vista. Through its actions, PG&E intended to cause Vista injury. Further, PG&E carried on its actions with a willful and conscious disregard of the rights of Vista and Vista's customers.

155.   WHEREFORE, Plaintiff requests that this Court enter judgment against PG&E as follows:

a.   Damages in an amount to be proven at trial, but estimated to be in the millions of dollars;

b.   Exemplary and punitive damages under Cal. Civ. Code § 3294;

c.   Its attorneys' fees and costs incurred as permitted by law; and

d.   Any other relief the Court deems appropriate.

## SIXTH CAUSE OF ACTION
### (Negligent Misrepresentation)

156.   Vista incorporates herein by reference all allegations set forth in Paragraphs 1 through 155 of this Complaint.

157.   PG&E made repeated false statements to Vista every time that PG&E used the wires to transmit information about Vista's customer accounts which reflected that Vista's customers had not paid for all of Vista's charges, but where in fact the customer had fully paid for Vista's charges but PG&E intentionally allocated those amounts to PG&E's portions of the customer's bill. These misrepresentations were material and were made without PG&E having reasonable grounds for believing the misrepresentations to be true.

158.   These misrepresentations were made as set forth in Paragraphs 1 through 89 above

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

- 32 -

and included affirmative false statements as to whether a customer had paid for Vista's charges, as well as the intentional concealment of the fact that the customer had, in fact, paid Vista's energy charges, but that PG&E retained those monies and applied them to its own customer accounts.

159.    PG&E intended that Vista rely on PG&E's misrepresentations. Vista justifiably relied on PG&E's misrepresentations about its customers by, *inter alia*, disconnecting its customers when, in fact, the customer's Vista charges were fully paid to PG&E.

160.    PG&E's misrepresentations described above have caused Vista damages, including lost revenues and income unlawfully withheld by PG&E, lost customers, lost market share, out of pocket costs associated with trying to collect customer accounts which PG&E falsely represented were not paid, and costs associated with trying to repair customer relationships for customers which Vista mistakenly attempted to collect from when in fact the customer had fully paid all of Vista's charges but PG&E had wrongfully withheld those amounts from Vista.

161.    WHEREFORE, Plaintiff requests that this Court enter judgment against PG&E as follows:

a.    Actual damages in an amount to be proven at trial, but expected to be in the millions of dollars;

b.    Exemplary and punitive damages under Cal. Civ. Code § 3294;

c.    Its attorneys' fees and costs incurred as permitted by law; and

d.    Any other relief the Court deems appropriate.

## SEVENTH CAUSE OF ACTION
### (Intentional Interference with Contract)

162.    Vista incorporates herein by reference all allegations set forth in Paragraphs 1 through 161 of this Complaint.

163.    Vista and its customers are parties to valid contracts under which Vista provides natural gas and the customers pay Vista's charges for that gas.

164.    PG&E is aware of Vista's contracts with its customers.

165.    PG&E's intentional acts are designed to induce a breach or disruption of the contracts between Vista and its customers. Specifically, PG&E made repeated, intentionally false statements

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

- 33 -

to Vista every time that PG&E used the wires to transmit information about Vista's customer accounts which reflected that Vista's customers had not paid for all of Vista's charges, but where in fact the customer had fully paid for Vista's charges but PG&E intentionally allocated those amounts to PG&E's portions of the customer's bill.

166.    In addition, PG&E's customer service representatives have encouraged Vista customers to cancel Vista's services during calls to discuss billing issues, which is an abuse of PG&E's status as Vista's billings and collections agent.

167.    PG&E intended to interfere with contracts between Vista and its customers by inducing Vista to send disconnection notices to these customers when, in fact, the customers' Vista charges were fully paid to PG&E.

168.    Certain Vista customers have cancelled their contracts with Vista based on PG&E's interference with the contracts between Vista and these customers.

169.    PG&E's intentional interference with the contracts between Vista and its customers have caused Vista damages, including lost revenues and income unlawfully withheld by PG&E, lost customers, lost market share, out-of-pocket costs associated with trying to collect customer accounts which PG&E falsely represented were not paid, and costs associated with trying to repair customer relationships for customers which Vista mistakenly attempted to collect from when in fact the customer had fully paid all of Vista's charges but PG&E had wrongfully withheld those amounts from Vista.

170.    WHEREFORE, Plaintiff requests that this Court enter judgment against PG&E as follows:

a.    Damages in an amount to be proven at trial, but estimated to be in the millions of dollars;

b.    Damages under Cal. Civ. Code § 3294;

c.    Its attorneys' fees and costs incurred as permitted by law; and

d.    Any other relief the Court deems appropriate.

**EIGHTH CAUSE OF ACTION**
**(Intentional Interference with Prospective Business Advantage)**

171. Vista incorporates herein by reference all allegations set forth in Paragraphs 1 through 170 of this Complaint.

172. Vista and its customers have an economic relationship in which Vista provides natural gas and the customers pay Vista's charges for that gas and under which there is a probability of future economic benefit to Vista.

173. PG&E is aware of Vista's economic relationship with its customers.

174. PG&E's intentional acts are designed to induce a breach or disruption of the economic relationship between Vista and its customers. Specifically, PG&E made repeated, intentionally false statements to Vista every time that PG&E used the wires to transmit information about Vista's customer accounts which reflected that Vista's customers had not paid for all of Vista's charges, but where in fact the customer had fully paid for Vista's charges but PG&E intentionally allocated those amounts to PG&E's portions of the customer's bill.

175. PG&E intended to interfere with the economic relationship between Vista and its customers by inducing Vista to send disconnection notices to these customers when, in fact, the customers' Vista charges were fully paid to PG&E.

176. In addition, PG&E's customer service representatives have encouraged Vista customers to cancel Vista's services during calls to discuss billing issues, which is an abuse of PG&E's status as Vista's billings and collections agent.

177. Certain Vista customers have cancelled their economic relationship with Vista based on PG&E's interference with the economic relationship between Vista and these customers.

178. PG&E's intentional interference with the economic relationship between Vista and its customers have caused Vista damages, including lost revenues and income unlawfully withheld by PG&E, lost customers, lost market share, out of pocket costs associated with trying to collect customer accounts which PG&E falsely represented were not paid, and costs associated with trying to repair customer relationships for customers which Vista mistakenly attempted to collect from when in fact the customer had fully paid all of Vista's charges but PG&E had wrongfully withheld those

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

- 35 -

1

amounts from Vista.

2

179.    WHEREFORE, Plaintiff requests that this Court enter judgment against PG&E as

3

follows:

4

a.    Damages in an amount to be proven at trial, but estimated to be in the millions of

5

dollars;

6

b.    Exemplary and punitive damages under Cal. Civ. Code § 3294;

7

c.    Its attorneys' fees and costs incurred as permitted by law; and

8

d.    Any other relief the Court deems appropriate.

9

10

**NINTH CAUSE OF ACTION**
**(Violation of Cal. Bus. & Prof. Code § 17200, et seq.)**

11

180.    Vista incorporates herein by reference all allegations set forth in Paragraphs 1 through

12

179 of this Complaint.

13

181.    PG&E's actions as described above are unlawful, unfair, anti-competitive, and/or

14

fraudulent business practices as defined by Cal. Bus. & Prof. Code § 17200, et seq.

15

182.    PG&E's unlawful, unfair, anti-competitive, and/or fraudulent business practices have

16

caused Vista damages and irreparable harm.

17

183.    Vista seeks restitution of all amounts paid by Vista customers to PG&E that PG&E

18

has not remitted to Vista, plus applicable interest.

19

184.    WHEREFORE, Plaintiff requests that this Court enter judgment against PG&E as

20

follows:

21

a.    Restitution of all amounts paid by Vista customers for Vista natural gas charges which

22

are being wrongfully held by PG&E;

23

b.    Its attorneys' fees and costs incurred as permitted by law; and

24

c.    Any other relief the Court deems appropriate.

25

26

27

28

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

COMPLAINT                                                                                          CASE NO.:

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff VISTA ENERGY MARKETING, LP prays for judgment against Defendants Pacific Gas and Electric Company, Albert Torres, Bill Chen, and Tanisha Robinson as follows:

(1)    Actual damages on all applicable Counts in an amount to be proven at trial;

(2)    Treble damages and attorneys' fees and costs as provided in 18 U.S.C. § 1964(c);

(3)    Treble damages and attorneys' fees and costs against Pacific Gas & Electric Company as provided in 15 U.S.C. § 15;

(4)    Exemplary and punitive damages as permitted by law;

(5)    Any other attorneys' fees and costs as permitted by law; and

(6)    Such other and further relief as may be appropriate.

**JURY DEMAND**

Vista respectfully demands a trial by jury under Fed. R. Civ. P. 38 on all of its claims so triable as permitted by law.

Dated: July 15, 2016

/s/ Nicholas B. Melzer
HOLLAND & KNIGHT LLP
Nicholas B. Melzer

Attorneys for Plaintiff
VISTA ENERGY MARKETING, LP

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

- 37 -

COMPLAINT                                                                CASE NO.: